**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **T & W Forge, Inc.** | ) | **CASE NO. 05-CV-1637** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **V & L Tool, Inc.** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Remand (Doc. 7) and Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue (Doc. 4). Defendant renewed its motions in V & L Tool, Inc.'s Renewed Motion to Dismiss. (Doc. 8). This case arises out of defendant's refusal to pay plaintiff for specialty parts manufactured by plaintiff and delivered to defendant. For the reasons that follow, plaintiff's motion is DENIED and defendant's motions are DENIED.

1

**FACTS**

Plaintiff, T & W Forge, Inc., is an Ohio corporation headquartered in Alliance, Ohio. (Compl. ¶ 1; Concoby Aff. ¶ 3). Defendant, V & L Tool, Inc., is a Wisconsin corporation with its only office in Waukesha, Wisconsin. (Kumbier Aff. ¶ 2).[1] Plaintiff and defendant are tied together through their shared relationship with Lycoming Engines ("Lycoming"). Plaintiff manufactures specialty forgings in its Ohio facility which defendant machines in Wisconsin for Lycoming's use in the manufacture of airplane engines. (*See* Kumbier Aff. ¶ 6; Concoby Aff. ¶ 6; Compl. Ex. A).

Defendant faxed a purchase order to plaintiff for "Aircraft Quality" connecting rod forgings on October 23, 2003. (Concoby Aff. ¶ 9; Compl. Ex. C). Plaintiff claims the order was unsolicited, while defendant alleges that Lycoming negotiated all essential terms with plaintiff and directed defendant to place the order. (Concoby Aff. ¶ 11; Kumbier Aff. ¶ 6). Plaintiff alleges that it responded to this purchase order with an "Order Acknowledgment" which included its standard "TERMS AND CONDITIONS." (Concoby Aff. ¶¶ 12, 13). Although an order acknowledgment for the October 23 order has not been provided, an order acknowledgment from a previous sale to defendant includes in its terms and conditions a statement that "[a]ny contract herein is to be construed under the laws of the State of Ohio."[2] (Compl. Ex. B).

---

[1] All references to the Kumbier affidavit are to the affidavit attached to defendant's reply brief, which includes all material from the original Kumbier affidavit.

[2] Plaintiff alleges that the order acknowledgment submitted in response to the October 23 purchase order included this provision. (Concoby Aff. ¶ 14).

2

Plaintiff manufactured the forgings in Ohio and shipped them from its Ohio facility to defendant in Wisconsin on January 6, 2004. (Compl. ¶ 5, Ex. A, D). Plaintiff's invoice directed defendant to pay $32,491.52 to an Illinois address. (Compl. Ex. D; Kumbier Aff. ¶ 8). Defendant claims that Lycoming instructed it to withhold payment on the invoice as a penalty for plaintiff's delivery of non-conforming parts, although it is unclear whether defendant is referring to the parts that were the subject of the October 23 order or defective parts from previous orders. (Kumbier Aff. ¶ 8). Prior to this dispute, plaintiff expected the parties' business relationship to continue. (Concoby Aff. ¶ 15).

Plaintiff avers that the parties' business relationship included at least twelve orders between 2001 and 2004. (Concoby Aff. ¶ 8). Defendant alleges that it has no offices or employees in Ohio, and that none of its employees traveled to Ohio to negotiate the purchase orders. (Kumbier Aff. ¶¶ 3, 4, 11). Plaintiff does not dispute defendant's lack of a physical presence in Ohio, but alleges that defendant has communicated extensively with plaintiff in Ohio by telephone and facsimile "to check the status of orders, to acknowledge the receipt of orders, and to exchange invoices and bills of lading." (Concoby Aff. ¶¶ 7, 8, 10). This prior relationship is supported by defendant's attachment of three documents from before the October 23 order that it claims demonstrate non-conforming parts and improper billing practices of plaintiff. (Kumbier Aff. ¶¶ 7, 9; Reply Ex. A2, A4).

Plaintiff filed its original six-count complaint ("First Complaint") in the Stark County Court of Common Pleas on March 28, 2005. Counts one, three, four and five sounded in contract or unjust enrichment and requested damages of $32,491.52. (1st Compl. ¶¶ 14, 25, 29, 33). Count two asserted a theory of misrepresentation and fraud and count six alleged

3

conversion.  (1st Compl. ¶¶ 21, 37).  In addition to compensatory damages of $32,491.52, counts two and six sought punitive or exemplary damages "of at least $100,000 . . . ."  (1st Compl. ¶¶ 21, 37).

Defendant removed the case to the Northern District of Ohio where it was assigned to this Court.  Defendant then filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer the case to the Eastern District of Wisconsin.  Plaintiff responded with a notice of dismissal without prejudice followed by a second complaint ("Complaint") filed in the Stark County Court of Common Pleas on May 20, 2005.

Although the allegations of the Complaint are nearly identical to the First Complaint, plaintiff did make some changes.  First, plaintiff added five paragraphs of jurisdictional allegations, including the allegation that "[t]he Ohio Courts of Common Pleas have jurisdiction over the parties and the causes of action being asserted because the damages pled on the face of the Complaint are less tan [sic] $75,000."  (Compl. ¶¶ 3-7).  Second, plaintiff changed counts two and six such that punitive or exemplary damages "of at least $100,000" was replaced with punitive or exemplary damages "to be determined by a jury . . . ."  (Compl.  ¶¶ 25, 41).

Defendant again removed the action to the Northern District of Ohio and filed a motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue.  (Doc. 1, Doc. 4).  Plaintiff responded with its first amended complaint ("Amended Complaint").  (Doc. 5).

**PLAINTIFF'S MOTION TO REMAND**

STANDARD OF REVIEW

Plaintiff moves to remand this action to state court.[3] Defendant opposes the motion. A defendant may remove an action from state court to federal court if the plaintiff could have filed suit originally in federal court. 28 U.S.C. § 1441(a). Because defendant claims that this controversy is subject to the Court's diversity jurisdiction, it must demonstrate that the parties are citizens of different states and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a). The removing defendant has the burden to prove diversity jurisdiction by a preponderance of the evidence. *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 572 (6th Cir. 2001). This burden applies even when the complaint alleges damages of less than $75,000. *Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000).

DISCUSSION

The parties do not dispute that plaintiff, an Ohio corporation with its principal place of business in Ohio, and defendant, a Wisconsin corporation with its principal place of business in Wisconsin, are residents of different states. (Compl. ¶ 2). Therefore, removal was proper if the amount in controversy exceeds $75,000.

A.     Plaintiff's First Amended Complaint

Plaintiff amended its Complaint after removal in an attempt to lower its demand below

---

[3] Defendant's motion to dismiss for lack of personal jurisdiction is also pending. Plaintiff's motion to remand argues that the jurisdictional threshold of $75,000 is not met, and as such challenges subject matter jurisdiction. Because the subject matter jurisdiction issue is not difficult, "both expedition and sensitivity to state courts' coequal stature" require that issue to be addressed first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587-88 (1999).

5

$75,000.  The parties dispute whether the Court may consider this Amended Complaint.  Defendant cites to long-standing precedent which bars consideration of post-removal changes, even if those changes reduce the amount in controversy below the jurisdictional threshold.  *E.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).  Plaintiff responds with a series of recent district court cases which hold that Congress overturned this rule by statute.

The Sixth Circuit has explicitly rejected the "revolutionary" interpretation of congressional intent suggested by plaintiff.  *Baldridge v. Kentucky-Ohio Transp., Inc.*, 983 F.2d 1341, 1348 & n.11 (6th Cir. 1993); *Van Meter v. State Farm Fire & Cas. Co.*, 1 F.3d 445, 450 n.2 (6th Cir. 1993).  Thus, the law remains that if the amount in controversy exceeds the jurisdictional amount as of the time of removal, any post-removal change or stipulation is ineffective to destroy diversity jurisdiction.[4]  *Rogers*, 230 F.3d at 873.  This includes cases where the plaintiff demands an amount less than the jurisdictional amount, but it is apparent that as of the time of removal more than $75,000 was in dispute.  *See id.* at 871-73 (explaining that state pleading rules allow a party to recover damages exceeding the demand and finding more than $75,000 at issue in light of previous lawsuit).

Accordingly, plaintiff's Amended Complaint will not be considered.  The amount in controversy must be determined as of the time of removal.

    B.    <u>The Amount in Controversy at the Time of Removal</u>

---

[4] Some courts suggest that post-removal evidence may be considered when a complaint is "*effectively silent* as to damages" and there is no other basis for determining the amount in controversy.  *Cole v. Great Atl. & Pac. Tea Co.*, 728 F. Supp. 1305, 1309 (E.D. Ky. 1990) (emphasis added).  As is detailed *infra*, plaintiff's Complaint and other pre-removal evidence provide ample evidence of the amount in controversy as of the time of removal.

Plaintiff argues that its Complaint "specifically avers that the damages sought will <u>not</u> exceed $75,000." Plaintiff also argues that a realistic assessment reveals that a potential award is unlikely to exceed $75,000. Defendant responds that plaintiff's open-ended claim of punitive damages pushes the amount in controversy above $75,000, and points to plaintiff's original demand of $100,000 in punitive damages as evidence.

Plaintiff's first contention is incorrect. Rather than specifically averring damages of less than $75,000, plaintiff alleges that "the damages *pled on the face of the Complaint* are less tan [sic] $75,000."[5] The "damages pled on the face of the Complaint" include $32,491.52 in compensatory damages plus punitive or exemplary damages "to be determined by a jury." This merely begs the question of whether the punitive or exemplary damages "to be determined by a jury" might exceed $42,508.48.[6] *See Lewis v. Exxon Mobil Corp.*, 348 F. Supp. 2d 932, 933-34 (W.D. Tenn. 2004) (finding that the jurisdictional threshold was met, in spite of an allegation in the complaint that "neither Plaintiff nor any class member asserts a claim in excess of $75,000," when the complaint demanded "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages"). Defendant is not required to prove that the plaintiff is actually entitled to punitive damages exceeding this amount to meet the

---

[5] Moreover, even if plaintiff had unequivocally disavowed damages in excess of $75,000, it would not preclude an independent inquiry into the amount in controversy. Because Ohio Civil Rule 54(c) allows a party to recover an amount in excess of its demand, the removing defendant always has an opportunity to show it is more likely than not that the amount in controversy actually exceeds $75,000. *Rogers*, 230 F.3d at 871.

[6] "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . ." *Hayes*, 266 F.3d at 572 (citation omitted).

preponderance or "more likely than not" standard. *Hayes*, 266 F.3d at 572. As long as "state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement." *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005).

Plaintiff alleges fraud and conversion, both of which allow for the recovery of punitive damages in Ohio. *Charles R. Combs Trucking, Inc. v. Int'l Harvester, Co.*, 466 N.E.2d 883, 888 (Ohio 1984) (fraud); *Meacham v. Miller*, 606 N.E.2d 996, 999 (Ohio App. 4th Dist. 1992) (conversion). Although this case involves the parties' performance under a contract, Ohio courts allow a plaintiff to recover punitive damages when an independent tort is committed. *DeCastro v. Wellston City Sch. Dist. Bd. Of Educ.*, 761 N.E.2d 612, 617 (Ohio 2002). As plaintiff has alleged in paragraph 23 of its Complaint, an action for fraud lies when a party enters into a contract not intending to fulfill the promises made in the contract. *Tibbs v. Nat'l Homes Constr. Corp.*, 369 N.E.2d 1218, 1223 (Ohio App. 12th Dist. 1977); *Carey v. Fedex Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 925 (S.D. Ohio 2004).

Having established that the punitive damages sought by plaintiff are at least arguably permitted, the next step is to assess the amount of the possible award. Plaintiff argues "that compensatory damages are used . . . as a yardstick against which to measure a proper punitive damage award . . . ." *Blust v. Lamar Adver. Co.*, 813 N.E.2d 902, 908 (Ohio App. 2d Dist. 2004). However, this supports rather than undercuts diversity jurisdiction. Here, punitive damages of $42,508.48—slightly more than 1.3 times the compensatory damage demand—will push the total amount in controversy above the jurisdictional threshold. Ohio courts routinely allow punitive damage awards at ratios well in excess of 1.3-to-1 and will not overturn a punitive award "unless it bears no rational relationship or is grossly disproportionate to the award of

8

compensatory damages." *Gollihue v. Consol. Rail Corp.*, 697 N.E.2d 1109, 1125 (Ohio App. 3rd Dist. 1997) (upholding an award of three times compensatory damages); *see also Dardinger v. Anthem Blue Cross & Blue Shield*, 781 N.E.2d 121, 134, 144-45 (Ohio 2002) (reducing an award of nearly twenty times compensatory damages to twelve times compensatory damages).

Morever, a ratio of 1.3-to-1 falls well within the federal Constitutional limits established by the Supreme Court. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in the range of 500 to 1 [or] 145 to 1."). Because plaintiff's total damage claim exceeds the jurisdictional threshold even when punitive damage claims are valued conservatively at just over 1.3 times the compensatory award, the Court finds that the amount in controversy exceeds $75,000. *See Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) (explaining that "the amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated"); *Graham v. Champion Int'l Corp.*, No. 2:97-CV-83, 1997 U.S. Dist. LEXIS 7401. at *1-2, 9 (E.D. Tenn. May 16, 1997) (finding the amount of controversy met when the plaintiff sought $45,000 in compensatory damages and an open-ended amount of punitive damages).

Plaintiff's First Complaint confirms this conclusion. Although plaintiff altered its jurisdictional allegations and demand between the first and second actions, the basic factual allegations and legal claims are unchanged. It is therefore appropriate to consider that the First Complaint alleged punitive damages of at least $100,000.[7] *See Rogers*, 230 F.3d at 871

---

[7] At a ratio of approximately three times the compensatory damages at issue, this is also well within the range of punitive damages

(considering original complaint and discovery answers from first action); *Szalay v. Yellow Freight Sys., Inc.*, 999 F. Supp. 972, 974 (N.D. Ohio 1996) (refusing to remand when a previous complaint regarding the same facts sought damages in excess of jurisdictional threshold).  This clarifies the Complaint's reference to an "amount to be determined by a jury[,]" and at more than twice the amount of punitive damages necessary to surpass the jurisdictional minimum, conclusively demonstrates that the amount in controversy exceeds $75,000.  Removal was therefore proper and plaintiff's motion to remand is denied.

## **DEFENDANT'S MOTION TO DISMISS**

### STANDARD OF REVIEW

Defendant moves to dismiss the case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  Plaintiff opposes the motion.  Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The weight of that burden depends on whether an evidentiary hearing is conducted. *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  Because neither party requested an evidentiary hearing or jurisdictional discovery,  and additional materials are not necessary to reach a decision, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  The pleadings and affidavits are considered in the light most favorable to plaintiff, and the conflicting assertions of the defendant are not given any weight. *Theunissen*, 935 F.2d at 1459.  However, the uncontested assertions of the defendant may be considered. *Kerry Steel, Inc. v. Paragon, Indus., Inc.*, 106 F.3d 147, 152-53 (6th Cir. 1997).

---

allowed by Ohio courts.

DISCUSSION

A federal court may exercise personal jurisdiction over a defendant if the courts of the forum state would be permitted to do so and if personal jurisdiction is proper under the Due Process Clause. *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997). Because Ohio's long-arm statute does not reach to the limits of due process, the requirements of both the Ohio long-arm statute and the Federal Due Process Clause must be demonstrated before a federal court can assert personal jurisdiction over defendant. *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1995).

A.  Due Process Clause

"Personal jurisdiction can be either general or specific, depending on the nature of the contacts that the defendant has with the forum state." *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002). Here, plaintiff does not argue that defendant's contacts are "continuous and systematic" such that Ohio courts have general jurisdiction over all claims against defendant. *Third Nat'l Bank In Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Plaintiff relies instead on specific jurisdiction, which relates to the specific claim at issue. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996). In addressing specific jurisdiction, both parties have attempted to extract from the cases per se rules which benefit their cause. However, courts do not look to "talismanic jurisdictional formulas" in assessing whether personal jurisdiction is proper. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1294 (6th Cir. 1989). Instead, each case is decided on its own specific facts. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

Plaintiff asserts that the following facts support personal jurisdiction:

- Defendant regularly placed orders with plaintiff and communicated with plaintiff

11

>       via phone and facsimile regarding those orders.
>
> •     The parties' business relationship included at least twelve prior orders and plaintiff expected that relationship to continue.
>
> •     Defendant placed an unsolicited order with plaintiff in Ohio for parts that were manufactured in plaintiff's Ohio facility. Defendant did not pay for those parts.
>
> •     The order at issue and prior orders included a provision that the contract was governed by Ohio law.

Defendant asserts that the following facts counsel against personal jurisdiction:

> •     Defendant has no offices or employees in Ohio and no employees traveled to Ohio with respect to the orders.
>
> •     The negotiations were conducted by Lycoming and defendant merely placed the orders.
>
> •     The parts were delivered to defendant in Wisconsin. The invoice from plaintiff stated that payment was to be made to an Illinois address.
>
> •     Defendant's assessment of the parts and decision not to pay was made in Wisconsin.

The three-part test for specific jurisdiction was first set out in *Southern Mach., Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*See, e.g., Compuserve*, 89 F.3d at 1263-68 (applying the three-part test).

As for the first element, defendant correctly notes that the mere existence of a contract involving a forum resident does not confer personal jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). However, when that contract contemplates the manufacture of products within the forum state, courts often find personal jurisdiction proper. *See In-Flight*

12

*Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 227 (6th Cir. 1972) ("Van Dusen entered into contract negotiations involving a substantial order for the manufacture of goods with a firm which it necessarily knew was based in Ohio and had its production facilities located within that State.  That the making (and breaking) of a contract with the Plaintiff would have substantial consequences in the State of Ohio is a reality of which Defendant could not have been ignorant."); *Southern Mach.*, 401 F.2d at 383 ("Mohasco dealt directly with a Tennessee corporation whose only manufacturing plant was located in Chattanooga.").  Assuming plaintiff's allegations to be true, defendant reached out from its Wisconsin offices to place an unsolicited purchase order with plaintiff's Ohio office for specialty forgings that were manufactured in Ohio.  The quality of those forgings is central to this lawsuit.

This dispute differs from *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (6th Cir. 1997), a case relied upon by defendant where the Sixth Circuit affirmed a finding that the Oklahoma defendant was not amenable to suit in Michigan.  Whereas in this case the plaintiff manufactured the forgings in Ohio for delivery in Wisconsin, in *Kerry Steel* the Michigan plaintiff did "not even assert that the coils were ever located in Michigan." *Id.* at 151.  Other contract cases cited by defendant similarly involved contracts that were performed outside of the forum state.  *See Calphalon*, 228 F.3d at 723 (finding that Ohio lacked jurisdiction over Rowlette when "the agreement and previous association between Calphalon and Rowlette centered on Rowlette representing Calphalon in the states of Minnesota, Iowa, South Dakota, North Dakota, and Nebraska"); *LAK*, 885 F.2d at 1302 (distinguishing the "significant ongoing manufacturing operations within the forum state" of *Van Dusen* and *Southern Machine* from Michigan's interest in a Florida real estate transaction involving a Michigan plaintiff and an Indiana defendant).

Plaintiff also alleges that this was an ongoing business relationship.  This provides further

13

support that defendant purposefully availed itself of the privilege of acting in Ohio.  In contract-related cases, courts should consider prior negotiations and the parties' course of dealing in assessing "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).  Although *Burger King* involved a restaurant franchise agreement that was performed entirely outside of the forum state (in contrast to the manufacturing contract performed within the forum state at issue here), the Court still found jurisdiction because of the extent of the parties' continuing contractual obligations.  *Id*.

In this case, the unpaid order was not the first time the parties conducted business.  The parties were engaged in an ongoing business relationship structured around their mutual customer Lycoming.  Plaintiff would have continued this relationship but for defendant's nonpayment.  Defendant submitted at least twelve purchase orders to plaintiff's Ohio office between 2001 and 2004 which were the subject of frequent telephone calls.  Defendant even justifies its refusal to pay for the forgings on quality and pricing issues with some of those previous orders.

Plaintiff also provided defendant with its standard terms and conditions which included that the contract is governed by Ohio law.  Although a choice of law provision standing alone does not justify jurisdiction, when combined with other jurisdictional facts it reinforces the defendant's "deliberate affiliation" with the forum state.  *Burger King*, 471 U.S. at 482.  Defendant has purposefully availed itself of the privilege of acting in Ohio.

Regarding the second element of the *Southern Machine* test, the cause of action also arises from defendant's activities in Ohio.  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."  *Compuserve*, 89 F.3d at 1267.  Defendant argues that it made its decisions

14

regarding non-payment and part quality in Wisconsin. However, defendant ignores the fact that the order was placed to Ohio and manufactured there. For the fraud claim, defendant's representations to plaintiff when it placed the orders are at issue. Although defendant has not yet asserted defenses or counterclaims, its factual submissions allege wrongdoing with respect to previous orders manufactured in Ohio. Because the operative facts relate to the parties' agreement and the representations surrounding that agreement, the cause of action arises from defendant's activities in Ohio.

The third element of the *Southern Machine* test requires that "the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Mach.*, 401 F.2d at 381. If the first two elements are met, an inference arises that the third element is satisfied. *Bird*, 289 F.3d at 875. Relevant factors include the burden on the defendant, the plaintiff's interests in obtaining relief, and the relative interest of different states in the most efficient resolution of controversies. *Id.* The inference is only overcome in the unusual cases where the forum state has no interest in resolving the litigation. *Southern Mach.*, 401 F.2d at 384.

Similar to *Compuserve*, although it may be burdensome to litigate in Ohio, defendant intentionally entered into a contract with an Ohio company, and did so with the intention of profiting from that contract. *Compuserve*, 89 F.3d at 1268. Ohio certainly has an interest in allowing an Ohio resident to litigate a contract for products manufactured in Ohio. Finally, there is no evidence that Wisconsin courts have any greater interest in resolving this dispute than Ohio courts. The Court therefore finds that the assertion of personal jurisdiction is reasonable.

Because all three elements of the *Southern Machine* test are met, personal jurisdiction over defendant does not offend due process.

15

B.     Ohio Long-Arm Statute

Having established that the assertion of personal jurisdiction over defendant would not offend due process, the next step is to determine whether jurisdiction exists under the Ohio long-arm statute.  Plaintiff asserts that its causes of action arise from defendant's "transaction of business" in Ohio.  Ohio Revised Code § 2307.382(A)(1); Civ. R. 4.3(A)(1).  Ohio courts afford this term a broad interpretation that "encompasses 'to carry on business' and 'to have dealings,' and is 'broader . . . than the word contract.'" *Goldstein*, 638 N.E.2d at 544 (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990)).

Defendant argues that it never entered Ohio and performed no physical acts in Ohio. However, a defendant can "transact business" in Ohio without entering Ohio.  *Kentucky Oaks*, 559 N.E.2d at 480.  Here, the parties have a contract for parts to be manufactured in Ohio that is part of an extended course of dealing.  Considering that Ohio courts have found the long-arm statute met when out-of-state defendants enter into contracts with Ohio residents to be performed *outside* of Ohio, this agreement certainly falls under the "transacting business" prong of the long arm statute.  *Goldstein*, 638 N.E.2d at 541, 544-45 (finding that the defendant transacted business in Ohio by disseminating documents to Ohio partners and investors regarding out-of-state bowling alleys); *Kentucky Oaks Mall*, 559 N.E.2d at 479-80 (finding that the defendant transacted business in Ohio by entering into a contract with an Ohio resident for a leased storeroom located in Kentucky).

Because jurisdiction is proper under Ohio law and would not offend due process, defendant's motion to dismiss for lack of personal jurisdiction is denied.

**DEFENDANT'S MOTION TO TRANSFER**

STANDARD OF REVIEW

16

Defendant also moves the Court to transfer the action to the Eastern District of Wisconsin. Plaintiff opposes the motion. "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although the relevant factors are similar to those traditionally employed in the *forum non conveniens* inquiry, the statute grants district courts broader discretion in deciding whether to transfer a case. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955).

Section 1404(a) entails a two-step process. First, defendant's proposed alternative forum must be a district "where [the action] might have been brought." 28 U.S.C. § 1404(a). The court may then "consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). The party seeking transfer has the burden to prove that the balance of convenience is strongly in favor of transfer. *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002); *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993).

DISCUSSION

The first step is to determine whether venue would be proper in the proposed transferee district, the Eastern District of Wisconsin. Because plaintiff does not dispute that venue would be proper in the Eastern District of Wisconsin, this first prong is satisfied.

Moving to the second part of the inquiry, the parties first dispute the weight to be given plaintiff's choice of forum. In most circumstances, plaintiff's choice of forum should be given "substantial weight." *Central States, Southeast & Southwest Areas Health & Welfare Fund v.*

17

*Guar. Trust Life Ins. Co.*, 8 F. Supp. 2d 1008, 1010 (N.D. Ohio 1998). However, that weight diminishes when the plaintiff's chosen forum has little connection to the plaintiff. *Id.* at 1010-11. Here, plaintiff resides in the Northern District of Ohio.

Defendant notes that some courts give little deference to plaintiff's choice when the chosen forum lacks any significant connection with the claim. However, the Northern District of Ohio has a significant connection to this claim, in that many of the operative facts underlying this controversy occurred in Ohio. Plaintiff and defendant agreed that plaintiff would produce forgings in Ohio for delivery to defendant in Wisconsin. Defendant alleges that the forgings are defective, a fact which would be discovered by defendant in Wisconsin and caused by plaintiff's manufacturing activities in Ohio. There are other factual disputes which are tied to Ohio but have little relationship to Wisconsin. For example, defendant alleges an improper steel charge by plaintiff. That steel was ordered by Lycoming from a New York steel company for delivery to plaintiff in Ohio. Whatever happened to that steel after it was delivered to plaintiff occurred entirely within the state of Ohio.

Plaintiff's choice of forum is, therefore, entitled to substantial weight.

With respect to the private interests of the parties, defendant first argues that it is ill-suited to litigate in Ohio while plaintiff is "likely more capable of litigating its claims in a foreign jurisdiction." Defendant's sole evidence is the fact that plaintiff has an Illinois office while defendant's only office is in Wisconsin. Without more, the mere fact that plaintiff has one Illinois office of unspecified size or responsibility provides little insight into the parties' respective ability to litigate in a foreign forum.

Defendant also argues that the convenience of the witnesses favors transfer to the Eastern District of Wisconsin. Some courts have stated that convenience of the witnesses is "the most

important factor" in deciding whether to transfer venue. *See Bacik*, 888 F. Supp. at 1414. Defendant has named five of its employees who might testify on matters relevant to this action. (Kumbier Aff. ¶ 12). Plaintiff responds generally that all of its witnesses are located in Stark County, Ohio. (Concoby Aff. ¶ 16). As was noted above, events in both Ohio and Wisconsin resulted in this dispute, and defendant has not demonstrated that a significantly greater number of witnesses are in Wisconsin. Morever, all of the potential witnesses identified by defendant are employed by defendant. When a party's out-of-state witnesses are its own employees, the inconvenience is greatly reduced because the party should have no difficulty compelling the employees' presence at trial. *Lemery v. Ford Motor Co.*, 244 F. Supp. 2d 720, 730-31 (S.D. Tex. 2002); *Neff Ath. Lettering Co. v. Walters*, 524 F. Supp. 268, 273 (S.D. Ohio 1981).

Thus, the balance of the parties' private interests does not support transfer. "The venue transfer provision of Section 1404(a) is not meant to merely shift the inconvenience to the plaintiff." *Bacik*, 888 F. Supp. at 1415; *see also Superior Consulting Co., Inc. v. Walling*, 851 F. Supp. 839, 845 (E.D. Mich. 1994) (finding it improper to "exchange[] the inconvenience of one party for that of the other").

Finally, the Court must consider public interest concerns. These concerns include "docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity with controlling law." *Jamhour*, 211 F. Supp. 2d at 945 (quoting *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)). Docket congestion will be given no weight because this Court's docket is not congested. Ohio's ties to the cause of action and its interest in this case were discussed above and need not be repeated here. Further, defendant has presented no evidence or argument that Wisconsin law would apply.

19

Because neither private nor public interests favor transfer to the Eastern District of Wisconsin, defendant's motion to transfer is denied.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Remand is DENIED, Defendant's Motion to Dismiss is DENIED and Defendant's Motion to Transfer is DENIED.


IT IS SO ORDERED.


                              /s/ Patricia A. Gaughan
                              PATRICIA A. GAUGHAN
                              United States District Judge


Dated:   10/21/05